IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KAPABLE KIDS LEARNING CENTER, INC.                          PLAINTIFF

v.                                    No. 4:03CV00754 GH

ARKANSAS DEPARTMENT OF HUMAN SERVICES, ET AL.              DEFENDANTS

## ORDER

By order filed on September 28th, the Court denied defendants' motion to dismiss. Thereafter, plaintiff filed its third amended complaint on November 10th, pursuant to 42 U.S.C. § 1983, seeking injunctive relief for alleged violations of its rights under the Medicaid Act.  It seeks injunctive relief for refusing to enroll plaintiff as a Medicaid provider so that it can provide and receive payment for services under the Developmental Disabilities Treatment Clinic Services ("DDTCS") program under the Arkansas Medicaid Plan ("State Plan").  Plaintiff states that Title XIX of the Social Security Act, 42 U.S.C. §1396, et seq., ("the Medicaid Act") is a joint federal and state program in which if a state chooses to participate, it must comply with all federal statutory and regulatory requirements.  Arkansas's State Plan includes services to developmentally-delayed persons under the DDTCS program and to become a provider, a prospective provider must complete an application and a provider contract and submit them to the Arkansas Department of Human Service ("ADHS") which – upon receipt and approval of the application and provider contact by the Enrollment Unit – will assign a DDTCS license and provider number and a DDTCS provider must

be enrolled by ADHS and receive a license and provider number before it can receive payment for service provided to qualified recipients.

Plaintiff continues that it submitted an application and provider contract to ADHS on April 22, 2003 for the purpose of obtaining a DDTCS license and provider number, but the application was denied on May 1, 2003 by ADHS which stated that it was not enrolling new programs at that time and would not even consider issuing new DDTCS licenses and provider numbers until it determines that there was a need for new clinics and issues a Request for Proposal ("REP") – a position taken since at least May of 1999.  It asserts that those who apply for licenses and provider numbers under other medicaid programs are not subject to the requirement of an RFP and, although defendants claim that they will not enroll new DDTCS clinics until they issue a RFP, they have issued new DDTCS licenses and provider numbers to others without first determining that there is a need for new clinics or issuing a RFP.  Count 1 alleges a violation of 42 U.S.C. §1396a(a)(30)(A) that defendants have denied the issuance of new DDTCS licenses and provider numbers in order to reduce the amount of money spent on such services without considering the factors of economy, efficiency, quality of care and equal access which violates the rights of plaintiff and the children plaintiff is not allowed to treat.  Count 2 alleges that as a result of defendants' decision to limit the availability of DDTCS services in Arkansas, children throughout Arkansas – including Pulaski County – do not have access to such services thereby violating the rights of plaintiff and the children the plaintiff is not allowed to treat under 42 U.S.C. §1396a(a)(1).  Count 3 alleges the same denial of the rights of plaintiff and the children plaintiff is not allowed to treat under 42 U.S.C. §1396a(a)(23) due to defendants' decision to limit the availability of DDTCS services in Arkansas. Count 4 alleges a violation of equal protection by subjecting plaintiff to a determination of need and

the issuance of a RFP while not imposing the same requirements on those who apply for licenses and provider numbers under other Medicaid programs.  Count 5 alleges a violation of equal protection by issuing new DDTCS licenses and provider numbers to other applicants without determining that there is a need for new clinics and issuing a RFP.  Plaintiffs seeks an injunction requiring ADHS to issue a DDTCS license and provider number to plaintiff and judgment for costs and attorney's fees pursuant to 42 U.S.C. §1988.

On January 18th, defendants filed a motion for summary judgment supported by a brief, exhibits, and a separate statement of undisputed facts.  They assert that the Court lacks subject matter jurisdiction, they are entitled to sovereign immunity and so are not subject to suit, and they are entitled to summary judgment as a matter of law as defendant could not issue the type of license sought by plaintiff and the state law relied on by them is sound in that it is rationally related to furthering the overall purpose and legislative intent of the Medicaid program.

Defendants explain the DDS licensing and certification procedures and contend that plaintiff did not comply with the requirements in obtaining a DDS license which is a mandatory prerequisite to applying for enrollment in the Medicaid program, but instead merely submitted the Application for Community Program License/Certification accompanied by s one-page letter to the Director's office with the hopes that those two documents would secure a DDS license for its facility and enroll it as a provider in the Medicaid program and that additional substantive requirements were added by Act 1639 which was reenacted through Act 16 which requires that the services would be delivered to an unserved or underserved area which plaintiff has failed to do.  That relevant language is set out below:

Funds allocated under the appropriation for community-based services, for Grants to Community Providers, in the Developmental Disabilities Services - Grants-in-Aid

appropriation in this act shall be used only to provide services through private community based services licensed or certified by the Arkansas Division of Developmental Disabilities Services (DDS).   Non-profit community-based programs licensed by the Division of Developmental Disabilities Services are quasi-governmental instrumentalities of the state which provide supports and services to individuals who have a developmental disability or delay, who would otherwise require supports and services through state-operated programs and facilities owned by the State of Arkansas.  When DDS licensed providers are involved in delivering services which are Medicaid reimbursable, they must enroll as a provider with the Arkansas Medicaid Program and must bill the Arkansas Medicaid Program for all covered services for eligible individuals.

Services which are covered by the Arkansas State Medicaid Program or under the Alternative Community Services Waiver Program (ACS) will be utilized to the maximum extent possible for any individual who is eligible for Medicaid coverage. It is the intent of this section that DDS, as a general policy, maximize the use of Medicaid funding available for appropriate services.

****

In the event that components of community-based services now funded from state and/or federal funds are extended to unserved or underserved areas of the state, or in the event that new services categories/codes are made available, to be funded from state and/or federal funds the existing all non-profit community programs licensed by the Division of Developmental Disabilities Services shall be granted an opportunity to make application to expand their service base to unserved or underserved areas or shall be granted an opportunity to make application to offer new services that the State intends to offer.  When the Division of Developmental Disabilities Services determines that state and/or federal funding for new or expanded services are to be available, it shall develop a Request for Proposal (RFP) process which includes a provision to provide notice of its intent to existing providers and to the general public.  Nothing in this Act shall restrict the Division's discretion to award new or expanded services to the existing community based service providers making application for the same pursuant to this section.  The intent of this section is to avoid unnecessary duplication of administrative costs and services in the extension or expansion of services.

Defendants next turn to the three provisions of the Medicaid Act cited by plaintiff.  Those provisions follow:

42 U.S.C.A. § 1396a provides in part:

A State plan for medical assistance must –
> (1) provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them;

42 U.S.C.A. § 1396a(23) states:

provide that (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services, and (B) an enrollment of an individual eligible for medical assistance in a primary care case-management system (described in section 1396n(b)(1) of this title), a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services under section 1396d(a)(4)(C) of this title, except as provided in subsection (g) of this section and in section 1396n of this title, except that this paragraph shall not apply in the case of Puerto Rico, the Virgin Islands, and Guam, and except that nothing in this paragraph shall be construed as requiring a State to provide medical assistance for such services furnished by a person or entity convicted of a felony under Federal or State law for an offense which the State agency determines is inconsistent with the best interests of beneficiaries under the State plan;

42 U.S.C.A. § 1396a(30)(A) states:

provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area;

Defendants first argue that these provisions do not create a right which is enforceable under §1983.  While acknowledging that the 8th Circuit has recognized that certain provisions of the Medicaid Act may give rise to §1983 actions, they state that was in the context of providers and recipients of which plaintiff is neither and that the intervening case of Gonzaga v. Doe, 536 U.S. 273 (2002), ushered in a new standard requiring clear statutory language for creating private rights of action enforceable under § -1983 in spending clause legislation.  They go on to discuss several cases

relevant to the specific provisions at issue here that these sections did not contain rights-creating language in the provisions enforceable under §1983 for recipients or providers.

Turning to equal protection, defendants argue that plaintiff cannot demonstrate an unequal classification among similarly situated individuals and that classification is wholly unrelated to any legitimate governmental purposes. They also contend that they are entitled to sovereign immunity since the complaint fails to cite a federal law or any provision in the United States Constitution that imparts an enforceable right on plaintiff to be issued a state DDTCS license.

Plaintiff initially filed a motion on February 11th, under Civil Procedure Rule 56(f) for an extension of time to respond until further discovery could be completed. Defendants responded on February 22nd that plaintiff had not shown good cause.

On March 30th, plaintiff filed a response with brief, exhibits, a response to defendants' statement of material fact, and its statement of disputed material facts. It contends that the Acts relied upon by defendants are not applicable to its request for a DDTC license and DDTCS provider number. Plaintiff counters that the Eighth Circuit has affirmed the holding of rights enforceable under §1396(a)(30)(A) in a post-<u>Gonzaga</u> decision and it is unfair for defendants to argue that they do not have rights when they have refused to issue a license that they do not require of anyone else. It continues with citations to post-<u>Gonzaga</u> cases permitting §1983 suits regarding the "statewideness" and "freedom of choice" provisions and noting that there is nothing to lead the Court to believe that the Eighth Circuit would not find the same.

Plaintiff points to the issuance of DDTCS provider numbers to dozens of applicants without making a determination of need and without issuing a RFP in addressing the equal protection claims. It also counters that federal question jurisdiction is in this case because plaintiff claims that its rights

have been violated under the Medicaid Act and the Equal Protection Clause and there is no sovereign immunity bar as they are seeking prospective injunctive relief.

On April 22nd, defendants filed a reply that plaintiff refuses to recognize that there is no such thing as a DDTC license or DDTCS license and has not presented any testimony from anyone from the Division of Medical Services which has the exclusive authority to enroll providers into the state Medicaid Program.  They continue that plaintiff has never acquired any federally protected rights as a Medicaid provider and so has no standing to enforce any provision of the Act that has never attached.  Defendants again argue that sovereign immunity bars this suit against the defendants in their official capacity even as to the request for prospective injunctive relief and that plaintiff's evidence supporting its equal protection claims shows that the two lists of DDS license holders of all three categories and DDTCS providers enrolled with Medicaid do not match up exactly – a misperception that may be based on different addresses of satellite facilities.

The Court repeats the holding  in the case of <u>Pediatric Specialty Care, Inc. v. Arkansas Dept. of Human Services</u>, 293 F.3d 472, 477-478 (8th Cir. 2002) as set out below:

> First, ADHS argues that the Medicaid Act does not create a federal right that appellees may enforce through a § 1983 action.  Section 1983 provides a federal cause of action against anyone who, acting pursuant to state authority, violates any "rights privileges or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  A remedy is available under § 1983 for violations of federal statutory and constitutional law.  <u>Maine v. Thiboutot</u>, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).  In order to bring a § 1983 claim, however, a plaintiff must assert a violation of a federal right, not just a violation of a federal law.  <u>Blessing v. Freestone</u>, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997) (citation omitted).  To determine whether the statute in question gives rise to a federal right, we consider three factors: (1) whether the provision in question was "intend[ed] to benefit" the putative plaintiff; (2) whether the interest the plaintiff asserts is not so "vague and amorphous" that it is beyond the competence of the judiciary to enforce; and (3) whether the provision in question creates a binding obligation on the governmental unit.  <u>Id</u>. (citations omitted).

The district court found that the plaintiffs met these requisites and properly asserted a federal right enforceable in a § 1983 action.  ADHS now challenges the court's holding that the provider plaintiffs are intended beneficiaries of the EPSDT provisions.  ADHS concedes, however, that the recipient beneficiaries are intended beneficiaries of the statute . Given this admission, even if we were to find that the provider plaintiffs are not the intended beneficiaries, the recipient plaintiffs may still enforce the federal statute.  Furthermore, ADHS does not argue with the proposition that even without individual standing, the provider plaintiffs in this case have standing to assert the rights of their CHMS patients.  See Singleton v. Wulff, 428 U.S. 106, 115-117, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (noting that "where the relationship between the litigant and the third party [is] such that the former is fully, or very nearly, as effective a proponent of the right as the latter," there may be an exception to the third party standing rules).  Therefore, we find no error in the district court's holding that the plaintiffs satisfied the "intended beneficiary" prong of the § 1983 test.

After remand, an appeal was again taken in Pediatric Specialty Care, Inc. v. Arkansas Dept.

of Human Services, 364 F.3d 925, 929-931 (8th Cir. 2004) from which the following is excerpted:

On remand, the district court held that ADHS violated the tenets of 42 U.S.C. § 1396a(a)(30)(A), often referred to as the "equal access provision" of the Medicaid Act, see Ark. Med. Soc'y Inc. v. Reynolds, 6 F.3d 519, 522 (8th Cir. 1993), by attempting to alter the CHMS program without first considering how efficiency, economy, quality of care, and access to care would be affected.  It enjoined ADHS from changing the program until an impact study considering these principles was completed.

At the outset, we dispose of ADHS's argument that the equal access provision of the Medicaid Act cannot support the Plaintiffs' procedural due process claim because it does not create any constitutionally-recognized property interest.  It is well established that "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security interests that a person has already acquired in specific benefits."  Board of Regents v. Roth, 408 U.S. 564, 576, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).  "Property interests, of course, are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Id. at 577, 92 S.Ct. 2701; accord Goldberg v. Kelly, 397 U.S. 254, 261-62, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (recognizing that federal and state regulatory frameworks had created a constitutional property interest in continued receipt of welfare benefits).  Over ten years ago, our court held that § 1396a(a)(30)(A) created enforceable rights for Medicaid recipients and providers.  Ark. Med. Soc'y, 6 F.3d at 528. We find it entirely appropriate for the Plaintiffs to base their procedural due process claim on their clearly established right to have equal access to quality medical care as defined by § 1396a(a)(30)(A).

Section 1396a(a)(30)(A) requires that state Medicaid plans employ "methods and procedures relating to the utilization of, and the payment for, care and services" as necessary to "assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." ADHS suggests that this statute does not apply since the rate it will pay each provider will remain the same. While the particular rate of payment for each provider may remain the same, § 1396a(a)(30)(A) concerns not only the rate, but also the method and process of payment for services. [Footnote omitted] The district court found that termination of parts of the CHMS program would result in a change in the level and method of payment for some services. We agree. In fact, it is difficult to discern how a decision to eliminate components of the CHMS program, but continue to pay for CHMS-like services, is anything but a change in the methods and procedures for payment of such services.

"[T]he remedy for a procedural due process violation is defined by the extent of the injury that resulted from the denial of constitutionally required process." Hopkins v. Saunders, 199 F.3d 968, 979 (8th Cir. 1999) (citing Carey v. Piphus, 435 U.S. 247, 263-64, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978)). Since this case involves a prospective due process violation, we look to whether the injunction adequately addresses what would otherwise be a denial of the Plaintiffs' constitutional rights. The district court held that "[b]efore the Defendants can terminate Medicaid payment for [CHMS] services, they must conduct a proper study and assure the citizens of Arkansas that the factors of economy, efficiency, quality of care and equal access will not be jeopardized." (Dist. Ct. Order of November 27, 2002, at 12.) Such an order permits the procedural due process issue to be revisited following completion of the study while remaining true to the Medicaid Act's equal access provision. We find no error in the injunction as so limited.

What is so important about the above affirmation that § 1396a(a)(30)(A) created enforceable rights for Medicaid recipients and providers is that opinion was rendered after Gonzaga. Moreover, a review of the district court pleadings during remand reveals that the same arguments as to the impact of Gonzaga were extensively briefed before Judge Wilson and so presumably were again raised in the appellate court which simply affirmed it previous holding without need for additional analysis.

The Court has reviewed the cases cited by the parties regarding 42 U.S.C.A. § 1396a(1) and 42 U.S.C.A. § 1396a(23) as well as other cases including the recent decision in Sanchez v. Johnson, 416 F.3d 1051, 1058-1059 (9th Cir. 2005). Since there is a split in the jurisdictions, the Court is

persuaded that, in light of the Eighth Circuit's continued position in <u>Pediatric Specialty</u>, that the Eighth Circuit would agree with those courts finding an enforceable right under provisions (1) and (23) in contrast to those courts such as <u>Sanchez</u>. To defendants' argument that plaintiff is still not a provider, the Court is persuaded that material fact questions remain in dispute. Although defendants might ultimately prevail at trial regarding their argument as to licensing, the Court cannot make that determination of the current record. Thus, defendants' arguments concerning jurisdiction, sovereign immunity and equal protection must also fail at this juncture.

Accordingly, defendants' January 18th motion (#35) for summary judgment is hereby denied. Plaintiff's February 11th motion (#40) to extend time was rendered moot by the filing of its response on March 30th.

IT IS SO ORDERED this 15th day of September, 2005.

_George Howard, Jr_
UNITED STATES DISTRICT JUDGE