IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KAPABLE KIDS LEARNING CENTER, INC.                               PLAINTIFF

v.                              No. 4:03CV00754 GH

ARKANSAS DEPARTMENT OF HUMAN SERVICES, ET AL.          DEFENDANTS

**ORDER**

Pending before the Court is plaintiff's April 11th motion summary judgment supported by brief and a separate statement of undisputed facts. Plaintiff states that it is seeking a Developmental Disabilities Services ("DDS") child services license from the defendants so that it can enroll as a provider under the Developmental Day Treatment Clinic Services ("DDTCS") program, but defendants have denied the request on the basis that Ark. Code Ann. §20-48-105 requires it to first determine whether Pulaski County is unserved or underserved as these terms have been defined under state law. Plaintiff argues that the statute only applies to residential programs and, as the DDTCS program is a non-residential program, defendants are not required to determine whether Pulaski County is unserved or underserved and should issue plaintiff a DDS child services license.

Plaintiffs contends that §20-48-105 only applies to residential programs, i.e., the Human Development Centers and ICF/MRs, and makes no references to non-residential programs. It states that §105 is one of four statutes that comprise Title 20, Subtitle 3, Chapter 48 of the Arkansas Code entitled "Treatment of the Developmentally Disabled." Plaintiff continues that §101 makes specific reference to the Human Development Centers in Arkansas and defines them as "institution[s]

-1-

maintained for the care and training of persons with developmental disabilities" and that §102 has been repealed. It excerpts the pertinent part of §103 as:

> 20-48-103. Purpose – Use of certain funds.
>
> It is the specific recommendation of the General Assembly that the Division of Developmental disabilities Services utilize Title XIX, social services block grant, and state grants-in-aid funds available to community programs to seek to achieve the following goals:
>
> (1)   Providing for operation of community-based <u>residential</u> programs which the state agency encouraged the community programs to build with nonstate funds .... [Emphasis added.]

Plaintiff points out that the recommendation is that the DDS use the designated funds to provide for residential programs and nothing is said about non-residential programs. It states that §104 is limited in its terms to intermediate care facilities for the mentally retarded ICF/MRs and that Betty Mains testified on April 10th that such a program is residential.

> Plaintiff sets out §105 as reflected below:
>
> (a)(1) In the event that existing services now funded from state or federal funds are extended to unserved or underserved areas of the state or in the event that new services are made available to be funded from state or federal funds, the existing nonprofit community programs licensed by the Division of Developmental Disabilities Services shall be granted an opportunity to make application to expand their service base to unserved or underserved areas or shall be granted an opportunity to make application to offer new services in their existing service area.
>
> (2) In areas in which the division determines that state or federal funding for new or expanded services is to be available, it shall provide notice of its intent to provide the services to existing providers in the area and to the general public.
>
> (3) Before licensing new service providers in an area, the division shall determine in writing that existing service providers are not qualified or are unable or unwilling to extend services to unserved or underserved areas or to provide new or expanded services.
>
> (4) Nothing in this section shall restrict the division's discretion to award new or expanded services to the existing community-based service providers making application pursuant to this section.

(b) The intent of this section is to avoid unnecessary duplication of costs and services in the extension or expansion of services.

(c) <u>Nonprofit community programs licensed by the division are quasi-governmental instrumentalities of the state which provide support and services to individuals who have a developmental disability or delay who would otherwise require support and services in facilities owned and operated by the State of Arkansas</u>.  [Emphasis supplied.]

Plaintiff argues that this section, like §§ 103 and 104 is limited to residential programs, i.e., non-profit community programs that provide community-based services as an alternative to institutionalization, and that the parties agree that the DDTCS program is a non-residential program as illustrated by the testimony of James Hayden and Mains at the hearing.  Plaintiff, thus, argues that, as §105 and its companion statutes do not apply to non-residential programs, defendants are not required to determine whether an area is unserved or underserved before they can issue a DDS license to a person who seeks to enroll as a DDTCS provider.

On April 12th, defendants filed a response as well as a response to the statement of undisputed facts.  They first address the question raised by the Court as to whether preemption was applicable by pointing out that plaintiff has recognized that it is not and that preemption doctrines apply only to state regulatory activities which is not implicated here.  Defendants next suggest that the Court certify the remaining issue – which is governed by state law – to the Supreme Court of Arkansas for determination.

Turning to the merits of plaintiffs' motion, defendants counter that plaintiff's assertion misses the mark as subsection (c) of §105 states that the provision applies to programs providing service to individuals who, but for those services, would otherwise require treatment in an institutional setting which by definition is not community-based so that the language defines non-profit community programs by the needs of the individual served.  Defendants continues that the

subsection defines a non-profit community program as a provider of services to individuals who are <u>not</u> receiving institutional, i.e., residential, care and that the use of the word "delay" presents a problem for plaintiff's interpretation as there is no category of institutional or residential care for individuals who are determined to be developmentally delayed but not developmentally disabled.

Defendants state that it is undisputed that the DDTC clinics are community based programs and that some, but not all, individuals served through the clinics have needs that would justify institutional or residential case if the clinics did not exist and that the DDTCS services may be covered only when they are provided to outpatients so the relevant question is whether DDTCS program recipients are such that the DDTCS Program falls within the scope of subsection (c). They argue that plaintiff's position – that DDTC clinics *are excluded* because some DDTCS recipients admittedly do not fall within the scope of subsection (c) – is no more persuasive than an argument that DDTC clinics *are within* the scope of the statute because some DDTCS recipients do not fall within the scope of subsection (c).

Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc</u>., 106 S.Ct. 2505, 2512 (1986). The non-moving party may not just rest upon his or her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548 (1986); Civil Procedure Rule 56. "The mere existence of a factual dispute is insufficient alone to bar summary

judgment; rather the dispute must be outcome determinative under prevailing law." Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir. 1989).

Local Rule 56.1 provides that a party moving for summary judgment must file a separate, short and concise statement of material facts as to which it contends there is no genuine issue to be tried. The rule further provides that unless the non-moving party files a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried, all material facts set forth in the moving party's statement will be deemed admitted.

As defendant's April 12th Local Rule 56.1 response admits the allegations in plaintiff's statement, those undisputed facts are set out below:

1. The plaintiff is a non-profit Arkansas corporation.

2. The plaintiff would like to enroll as a provider under the Developmental Day Treatment Clinic Services ("DDTCS") program.

3. In order to enroll as a provider under the DDTCS program, the plaintiff must first obtain a Developmental Disabilities Services ("DDS") child services license from the Division of Developmental Disabilities Services at the Arkansas Department of Health and Human Services.

4. The DDTCS program is a non-residential program.

After consideration of the parties' arguments, the Court finds that plaintiff's analysis of the statutory context demonstrates that §105 is indeed limited to residential programs, that its interpretation is more persuasive, and so defendants are not required to determine whether an area is unserved or underserved before they can issue a DDS license to a person who seeks to enroll as a DDTCS provider.

The parties are directed to promptly notify the Court whether there are any other issues pending that necessitate the trial resuming on May 4th.

Accordingly, plaintiff's April 11th motion (#79) for summary judgment is hereby granted.

IT IS SO ORDERED this 28th day of April, 2006.

*George Howard Jr*
UNITED STATES DISTRICT JUDGE